Merrimack,
March 3, 1936.

EUGENE J. PAULETTE, *Adm'r*

*v.*

BOSTON AND MAINE RAILROAD.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper & Jones (Mr. Piper* orally), for the defendant.

BRANCH, J. The plaintiff's intestate was killed upon April 10, 1933, as the result of a collision at the Bradford Street crossing in the city of Keene, between a motor truck driven by the decedent and a passenger train of the defendant. The uncontradicted evidence demonstrated that the statutory crossing signals by whistle and bell were given and no claim to the contrary was made by the plaintiff. The case was tried upon the assumption, clearly required by the evidence, that the deceased was guilty of negligence because he "drove onto the track at a grade crossing without keeping a lookout," and was submitted to the jury solely under the rule of the last clear chance, without exception by the plaintiff.

The issue was still further narrowed by an instruction, to which the plaintiff did not except, that "the engineer appears to have applied his brakes seasonably and properly." Consequently the only specific question finally left to the jury was whether the engineer, after discovering the decedent's inattention to his danger, should have

used the whistle to give further warning of the train's approach in addition to applying the brakes and sanding the track as he did.

There is no room in the present case for the conclusion suggested in *Jones* v. *Railroad*, 83 N. H. 73, 82, that the engineer "was at fault for devoting his time to futile efforts to stop the train." No such theory was advanced at the trial. On the contrary, the slowing up of the train by the action of the brakes may well have seemed to offer the best chance to avoid the accident by giving the truck driver an opportunity to pass in front of the locomotive. This view received confirmation at the argument in this court when counsel for the plaintiff made a belated, but necessarily abortive, attempt to sustain the claim that the brakes should have been applied sooner than they were.

The argument of the plaintiff in support of the verdict is based first upon the testimony of the engineer that he became aware of the decedent's inattention while he was in the act of blowing the last blast of the crossing whistle and that he immediately dropped his left hand from the whistle cord to the brake lever in order to make an emergency stop; second, upon the testimony of a discharged engineer, formerly employed by the defendant, who testified as an expert that there is no "reason why in an emergency a capable engineer cannot pull the whistle cord and throw the emergency at the same time .... There are two articles he should be using at the same time, .... The whistle and brake." Upon this testimony the specific contention of the plaintiff is that the engineer was findably at fault because he did not continue to blow the whistle with his left hand and at the same time operate the brake lever with his right.

One answer to this argument is that if due care required the prompt application of the brakes, as both parties seemed to agree at the time of trial, the engineer adopted the quickest method to accomplish that result. As the train approached the crossing he testified that he was leaning out of the window at the right hand side of the cab. This testimony was developed by the leading questions of plaintiff's counsel and was in no way controverted. Such a position necessarily hampered the use of his right arm. The brake lever was located just above his left knee. Under these circumstances it cannot be doubted that he could drop his left hand from the whistle cord to the brake lever more quickly than he could shift his position and reach across his body to the brake lever with his right hand, while still holding the whistle cord with the left.

The complete answer to the plaintiff's contention, however, is that there is no basis in the evidence for the finding that further whistling

would have averted the accident. "The last chance must be a clear one, reasonably found to be fairly given." *Morrison* v. *Railroad,* 86 N. H. 176, 180; *Ramsdell* v. *Company, Ib.* 457, 462. The point at which the duty to act devolved upon the engineer was the point at which he became aware of the decedent's inattention. *Clark* v. *Railroad,* 87 N. H. 36. Both parties agree that this point was circumstantially indicated by the action of the engineer in dropping the whistle cord and applying the brakes. The engineer himself located this point at about 100 feet from the crossing. The testimony most favorable to the plaintiff in this respect came from the witness Little, who testified as follows: "Q. You remember where that semaphore is, do you, west of the track? A. Yes. ... Q. You remember you did have some idea of where it was that the train was with reference to that semaphore when it stopped whistling? A. It would probably be half way down from the crossing to the semaphore; nearer to the crossing, if anything, than it was to the semaphore. Q. You say half way? A. Half way. Q. And then stopped? A. I stopped, yes. Q. And the whistle stopped? A. I don't recall whether the whistle was blowing when I saw the train. I don't think it was. Q. When you first saw the train? A. I think the whistle was through blowing when I saw the train."

It is obvious from this testimony that the witness referred to the spot where the whistle stopped and the point where he first saw the train as substantially identical.

The semaphore referred to was located 424 feet from the crossing. By other testimony, the same witness fixed the point where he first saw the train (what part of it did not appear) with reference to a row of apple trees, at about 185 feet from the crossing.

The only conclusion properly deducible from the foregoing testimony was that the whistle stopped at a point approximately 200 feet from the crossing. If the decedent failed to hear and heed it at this distance, there is no basis for a finding that he would have paid attention to it if it had continued to blow. As was said in *Collette* v. *Railroad,* 83 N. H. 210, 219: "If a whistle under some views as to speeds and distances might have resulted in preventive action, yet it is only a possibility and falls short of probability as the test of proof. For the jury to have found that a warning whistle after discovery of the danger would have made an avoidable situation it was necessary to make assumptions no fair view of the evidence justifies."

*Judgment for the defendant.*

PAGE, J., did not sit: the others concurred.